UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

**Sep 29, 2023**

SEAN F. McAVOY, CLERK

| | |
|---|---|
| KIMBERLY S. W.,<br><br>                    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | NO:  1:22-CV-3114-RMP<br><br>ORDER GRANTING PLAINTIFF'S<br>BRIEF AND REMANDING FOR<br>ADDITIONAL PROCEEDINGS |

BEFORE THE COURT, without oral argument, are cross-briefs from Plaintiff Kimberly S. W.[1], ECF No. 10, and Defendant the Commissioner of Social Security (the "Commissioner"), ECF No. 13.  Plaintiff seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) of the Commissioner's partial denial of her claim for Social Security Income ("SSI") under Title XVI of the Social Security Act (the "Act").  *See* ECF No. 10 at 2.

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and middle and last initials.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR
ADDITIONAL PROCEEDINGS ~ 1

Having considered the parties' briefs, ECF Nos. 10, 13, and 14, the administrative record, and the applicable law, the Court is fully informed.  For the reasons set forth below, the Court grants Plaintiff's request for judgment and remand in her Opening Brief and remands for further proceedings.

## BACKGROUND

### *General Context*

Plaintiff applied for SSI on approximately June 14, 2019, alleging an onset date of February 8, 2008.  Administrative Record ("AR")[2] 13, 263–69.  Plaintiff was 44 years old on the alleged disability onset date and asserted that she was unable to work due to depression, anxiety, fibromyalgia, and sleep disorder.  *See* AR 303–08.  Plaintiff's application was denied initially and upon reconsideration, and Plaintiff requested a hearing.  *See* AR 167–68.

On May 25, 2021, Plaintiff appeared by telephone, represented by non-attorney Justin Jerez[3], at a hearing held by Administrative Law Judge ("ALJ") Glenn Meyers from Seattle, Washington.  AR 69–71.  The ALJ heard from Plaintiff as well as vocational expert ("VE") Stacey Lambert.  AR 71–95.  ALJ Meyers issued an

---

[2] The Administrative Record is filed at ECF No. 8.

[3] Plaintiff provided the Social Security Administration ("SSA") with an Appointment of Representative form naming D. James Tree of Tree Law PLLC as his principal representative and Mr. Jerez, of the same firm, as an additional representative. AR 250–54.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 2

unfavorable decision on June 30, 2021, and the Appeals Council denied review.  AR 1–6, 13–27.

### *ALJ's Decision*

At the outset of ALJ Meyers's decision, he found that Plaintiff had filed a previous application for SSI that was denied in 2015, and determined that Plaintiff's allegation of disability beginning February 8, 2008, was an implied request to reopen that prior claim.  AR 13.  The ALJ denied the implied request to reopen because the current SSI application date was not within the two-year reopening period from the initial denial of the prior application.  AR 13.  In addition, ALJ Meyers found that Plaintiff had rebutted the presumption of non-disability that applied to Plaintiff's current claim because of the 2015 adverse decision because Plaintiff alleged new impairments.  AR 14.  Consequently, the ALJ "adopted the findings from the prior decision unless new and material evidence warrants a change in those findings."  AR 14.

Applying the five-step evaluation process, ALJ Meyers found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since June 14, 2019, the application date.  AR 16.

**Step two:** Plaintiff has the following severe impairments: depressive disorder, anxiety disorder, fibromyalgia, migraines, right knee condition, and obesity.  AR 16 (citing 20 C.F.R. § 416.920(c)).  The ALJ further wrote, "Regardless of the precise

diagnoses I find severe, I have considered all the claimant's symptoms as reflected in the longitudinal record in evaluating his testimony and in assessing the residual functional capacity below." AR 16.

**Step three:** The ALJ concluded that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). AR 16. With respect to Plaintiff's physical impairments, the ALJ memorialized that: Plaintiff's knee condition did not meet, or medically equal, listings 1.18 for abnormality of a major joint(s) in any extremity; Plaintiff's migraines do not medically equal listing 11.02B for dyscognitive seizures, the listing under which migraines are evaluated; and Plaintiff's obesity, alone or in combination with other impairments, does not meet or medically equal any of the listings. AR 17 (citing Social Security Ruling 19-20).

With respect to Plaintiff's mental impairments, the ALJ addressed the "paragraph B" criteria with respect to listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders) and found that Plaintiff's impairments do not result in one extreme limitation or two marked limitations in a broad area of functioning. AR 17–19.

The ALJ found that Plaintiff is moderately limited in: understanding, remembering, or applying information; and interacting with others; concentrating,

1    persisting, or maintaining pace; and in adapting or managing oneself.  AR 17–18.

2    The ALJ found that Plaintiff is mildly limited in adapting or managing oneself.  AR

3    18.  The ALJ cited to portions of the record explaining his findings.  AR 17–19.

4         The ALJ also memorialized his finding that the evidence in Plaintiff's record

5    fails to satisfy the "paragraph C" criteria.  AR 19.

6         **Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff can

7    perform light work, as defined in 20 C.F.R. § 416.967(b) except that she must be

8    able to sit and stand at will while working.  AR 19.  In addition: "She can remember,

9    understand, and carry out simple and routine instructions and tasks consistent with

10   the learning and training requirements of SVP level one and two jobs. She cannot

11   have contact with the public. She can work in proximity to but not in coordination

12   with co-workers. She can have occasional contact with supervisors. She can

13   occasionally stoop. She cannot perform crouching, crawling, kneeling, or climbing

14   of ramps, stairs, ropes, ladders, or scaffolds."  AR 19.

15        In determining Plaintiff's RFC, the ALJ found that: Plaintiff's "medically

16   determinable impairments could reasonably be expected to cause the alleged

17   symptoms.  However, [Plaintiff's] statements concerning the intensity, persistence

18   and limiting effects of these symptoms are not entirely consistent with the medical

19   evidence and other evidence in the record for the reasons explained in this decision.

20   The evidence is partially consistent with the claimant's allegation.  It reflects

21

limitations, but is not consistent with the claimant's statements regarding the intensity, persistence, and limiting effects of their symptoms." AR 20.

**Step four:** The ALJ found that Plaintiff is unable to perform any past relevant work, including her past relevant work as a housekeeper. AR 25 (citing 20 C.F.R. § 416.965).

**Step five:** The ALJ found that Plaintiff has a limited education and was 44 years old, which is defined as a younger individual (age 18-49), on date that the application was filed. AR 25 (citing 20 C.F.R. §§ 416.963 and 416.964). The ALJ found that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills. AR 26 (citing Social Security Ruling ("SSR") 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). The ALJ found that given Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 26 (citing 20 C.F.R. §§ 416.969 and 416.969(a)). Specifically, the ALJ recounted that the vocational expert identified the following representative occupations that Plaintiff would be able to perform with the RFC: router (light, unskilled, with around 76,500 jobs nationally); marker (light, unskilled work, with around 171,000 or 85,500 jobs nationally, the ALJ's decision

1   does not make clear which); and bench assembler (light, unskilled work with around

2   100,000 jobs nationally).  AR 26.

3        The ALJ concluded that Plaintiff had not been disabled within the meaning of

4   the Act at any time since filing her application on June 14, 2019.  AR 27.

5        Through counsel D. James Tree, Plaintiff sought review of the ALJ's

6   unfavorable decision in this Court.  ECF No. 1.

7                              **LEGAL STANDARD**

8   ***Standard of Review***

9        Congress has provided a limited scope of judicial review of the

10  Commissioner's decision. 42 U.S.C. § 405(g).  A court may set aside the

11  Commissioner's denial of benefits only if the ALJ's determination was based on

12  legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d

13  993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's]

14  determination that a claimant is not disabled will be upheld if the findings of fact are

15  supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.

16  1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere

17  scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

18  1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir.

19  1989).  Substantial evidence "means such evidence as a reasonable mind might

20  accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,

21

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR
ADDITIONAL PROCEEDINGS ~ 7

401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" also will be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

A decision supported by substantial evidence still will be set aside if the proper legal standards were not applied in weighing the evidence and making a decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

### *Definition of Disability*

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act also provides that a claimant shall be determined to be under a disability only if the impairments are of such severity that the claimant is not only unable to do their previous work, but cannot, considering the claimant's

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 8

age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).  Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### *Sequential Evaluation Process*

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled.  20 C.F.R. § 416.920.  Step one determines if they are engaged in substantial gainful activities.  If the claimant is engaged in substantial gainful activities, benefits are denied.  20 C.F.R. § 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity.  20 C.F.R. § 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.  If the impairment

1    meets or equals one of the listed impairments, the claimant is conclusively presumed

2    to be disabled.

3          If the impairment is not one conclusively presumed to be disabling, the

4    evaluation proceeds to the fourth step, which determines whether the impairment

5    prevents the claimant from performing work that they have performed in the past.  If

6    the claimant can perform their previous work, the claimant is not disabled.  20

7    C.F.R. § 416.920(a)(4)(iv).  At this step, the claimant's RFC assessment is

8    considered.

9          If the claimant cannot perform this work, the fifth and final step in the process

10   determines whether the claimant is able to perform other work in the national

11   economy considering their residual functional capacity and age, education, and past

12   work experience.  20 C.F.R. § 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137,

13   142 (1987).

14         The initial burden of proof rests upon the claimant to establish a prima facie

15   case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th

16   Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden

17   is met once the claimant establishes that a physical or mental impairment prevents

18   them from engaging in their previous occupation.  *Meanel*, 172 F.3d at 1113.  The

19   burden then shifts, at step five, to the Commissioner to show that (1) the claimant

20   can perform other substantial gainful activity, and (2) a "significant number of jobs

21

exist in the national economy" that the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

The parties' briefs raise the following issues regarding the ALJ's decision:

1.    Did the ALJ erroneously discount Plaintiff's subjective complaints?

2.    Did the ALJ erroneously assess the medical source opinions?

3.    If the Court finds error by the ALJ, what is the appropriate remedy?

### *Subjective Symptom Testimony*

Plaintiff argues that the ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's testimony with respect to her various conditions, and the Court addresses each in turn, as set forth under the headings below.  ECF No. 10 at 4.

In deciding whether to accept a claimant's subjective pain or symptom testimony, an ALJ must perform a two-step analysis.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the ALJ must evaluate "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if the first test is met and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about

the severity of her symptoms only by offering specific, clear and convincing reasons

for doing so." *Smolen*, 80 F.3d at 1281.

There is no allegation of malingering in this case. Plaintiff alleged the

following impairment, as summarized in the ALJ's decision:

> In a disability report filed August 2019, the claimant alleged disability
> due to depression, anxiety, fibromyalgia, and a sleep disorder (B6E). In
> a function report, she alleged that she has knee pain, severe anxiety, and
> fibromyalgia (B1E). She does not drive because she has anxiety and has
> "been in way too many car accidents" (B1E/4). She has never been able
> to count change or money, and cannot manage a checkbook. She has
> difficulty with lifting, squatting, bending, standing, walking, and
> kneeling (B1E). She has problems with memory, completing tasks, and
> concentration. She has difficulty with spoken instructions but does
> "fine" with written instructions (B1E/6).
>
> At the May 25, 2021, hearing, the claimant stated that she lives alone.
> She has two dogs that she takes care of. She testified that she walks the
> dogs one to two times a day for an hour each time. She has to stop and
> rest sometimes while walking the dogs; she stops walking and stands
> there for five to ten minutes before walking again. She later testified
> that she walks her dogs three times a day. She cooks and cleans for
> herself. She walks or takes the bus to doctor visits and to the grocery
> store. It takes her one and a half hours to walk to her doctor's office.
> She decides about walking or taking the bus depending on how she
> feels.
>
> She babysat her boyfriend's son three days a week for about a year. She
> babysat the child alone. Sometimes she babysat in the morning and
> sometimes in the afternoon. It was difficult because of the child's
> behavior. She babysat to help cover her boyfriend's work schedule. She
> stopped caring for him because he went back to school. She was
> overwhelmed while babysitting and had panic attacks. The claimant
> cannot go anywhere alone. Her boyfriend comes over every day. She
> does not drive because she has been in too many accidents as a
> passenger and because she has too much anxiety. She goes to the
> grocery store one time week, and someone goes with her. Someone

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR
ADDITIONAL PROCEEDINGS ~ 12

goes with her when she walks her dogs. She has headaches that sometimes last all day; she can still attend scheduled appointments when she has a headache.

She has poor math skills and cannot count change. She completed her function report alone, but it took her a long time because she has poor reading comprehension. She has a poor memory and difficulty learning things. She has poor sleep and is tired during the day. Due to her anxiety, she could not even work in a simple job where she would sit most of the day. She would have too much anxiety and panic attacks with poor concentration.

AR 20.

### **Fibromyalgia**

Plaintiff first alleges error with respect to the ALJ's assessment of her fibromyalgia-related impairments. ECF No. 10 at 4. First, Plaintiff argues that the ALJ's finding that it was not clear where Plaintiff had fibromyalgia pain "reflects a failure to understand the nature of [fibromyalgia]." *Id.* (citing AR 21; *Benecke v. Barnhart*, 379 F.3d 587, 589–90 (9th Cir. 2004) (characterizing fibromyalgia as a condition with "chronic pain throughout the body (Plaintiff's emphasis removed)). Plaintiff argues that her tender point exam, "which was positive for over 11/18 tender points," supports that pain was distributed around the body. *Id.* (citing AR 365; SSR 12-2p). Plaintiff also cites medical records in which Plaintiff has complained of body aches, low back pain, chronic shoulder pains, tension, chest pains, joint pains or swelling, and muscle pains. *Id.* (citing AR 364, 366, 413, 417, 421, 425, 433, 442, and 475).

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 13

Second, Plaintiff further argues that the ALJ erred in reasoning that Plaintiff's fibromyalgia was not disabling because she had benign findings without significant abnormality in her gait, strength, or other musculoskeletal findings.  ECF No. 10 at 4 (citing AR 21).  Plaintiff submits that the Ninth Circuit has recognized that fibromyalgia is "diagnosed 'entirely on the basis of patients' reports of pain and other symptoms,' 'there are no laboratory tests to confirm the diagnosis, and so "normal muscle strength, tone, and stability, as well as a normal range of motion' is all 'perfectly consistent with debilitating fibromyalgia.'"  *Id.* (quoting *Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017)).

Third, Plaintiff argues that the record that the ALJ cited in finding that Plaintiff received conservative treatment for fibromyalgia appears to contain a transcription error.  ECF No. 10 at 5.  Plaintiff specifies that while the cited record discusses "conservative" treatment for Plaintiff's fibromyalgia, the treatment described is identical to what was prescribed for Plaintiff's chronic low back pain with right-side sciatica and likely was transcribed incorrectly.  *Id.* (citing AR 365, 401, 425, and 432).

Fourth, Plaintiff maintains that the ALJ did not cite to substantial evidence in finding that Plaintiff stated that treatment controlled her fibromyalgia pain.  ECF No. 10 at 6 (citing AR 21, 416–17, 422; SSR 16-3p).

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 14

The Commissioner responds that the record supports that Plaintiff's fibromyalgia "was treated conservatively with Cymbalta, a serotonin-norepinephrine reuptake inhibitor, and over-the-counter anti-inflammatory medications." ECF No. 13 at 4 (citing AR 401, 409, 416, 432, 441, 536, 544, and 581). The Commissioner continues that Plaintiff's treatment providers further recommended "stretching, light exercise, relaxation techniques, diet, counseling, ice followed by heat, and soaking in warm water with Epsom salt." *Id.* (citing AR 365, 409, 441, 536, 544, and 581). The Commissioner argues that the record shows that "in late 2018," Plaintiff's symptoms were "improving" and in early 2019 Plaintiff's symptoms were "stable' and "Cymbalta reportedly 'worked well[.]'" *Id.* (citing AR 417 and 426). The Commissioner also submits that Plaintiff received more conservative treatment than the claimant in *Revels*, who "received injections and took a variety of medications, including Valium, Vlector, Soma, Vocodin, Percocet, Neurontin, Robaxin, Trazodone, and Lyrica. . . ." *Id.* (citing *Revels*, 874 F.3d at 667).

Plaintiff replies that the Commissioner did not dispute that the ALJ erred by discounting Plaintiff's fibromyalgia allegations because it was not clear where Plaintiff had fibromyalgia pain." ECF No. 14 at 2 (citing AR 21). Plaintiff submits that the Commissioner also does not dispute that the ALJ erroneously discounted findings because Plaintiff had benign musculoskeletal findings despite her fibromyalgia. *Id.* at 3 (citing AR 21). Plaintiff further replies that the Commissioner

"misses the point" of the *Revels* opinion and the Ninth Circuit's "explanation that it had previously found treatment conservative in *Rollins v. Massanari*, 261 F.3d at 856, "'only after noting that the doctor had primarily recommended that the petitioner 'avoid strenuous activities.'" *Id.* at 4. With respect to whether treatment controlled Plaintiff's fibromyalgia pain, Plaintiff submits that the Commissioner "does not dispute that, where the ALJ cited, the record does not state [that treatment controlled Plaintiff's fibromyalgia pain], and she was in fact in 8/10 pain." *Id.* (citing AR 416–17, 422). Plaintiff cites Ninth Circuit authority holding that district courts are constrained to review the reasons that the ALJ provides, and that "'improvement' must be 'read in context of the overall diagnostic picture[,]' which showed she was still in 8/10 pain." *Id.* (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1161–62 (9th Cir. 2014); AR 422).

The ALJ addressed Plaintiff's fibromyalgia in a paragraph:

> Regarding the claimant's allegations of musculoskeletal pain, the record shows complaints and treatment for fibromyalgia and, beginning in late 2019, right knee pain. However, the treatment notes are not clear regarding where in her body the claimant reports fibromyalgia pain. And apart from a limp due to transient back pain in 2018, treatment notes reflect benign findings, with no significant abnormality in gait, strength, or other aspects of musculoskeletal function regarding walking, lifting, or any other area. Doctors recommended only conservative treatment with medication and physical therapy. The claimant told providers that the treatment controlled her fibromyalgia pain.

AR 21 (citing AR 391–448; 407; 414; 416–22; 424–38; 442–44; 455–61; 491–509; 580–93).

In the first reason provided by the ALJ for rejecting Plaintiff's subjective complaints with respect to her fibromyalgia, the ALJ cited broadly to 72 pages of Plaintiff's medical records as support that Plaintiff did not report where she was experiencing pain. AR 21. The cited records indicate that Plaintiff sought repeated follow-up care for fibromyalgia and reported pain at most of her medical appointments, indicating an intensity of 5/10, 6/10, and 8/10. AR 406–07, 414, 422; *but see* AR 582 (reporting no body aches or muscle pain and a pain score of 0/10 in May 2021). The ALJ did not question whether Plaintiff has fibromyalgia and found it to be a severe impairment. AR 16. The SSA describes fibromyalgia is a "complex medical condition" characterized by "widespread pain" throughout the body. *See* SSR 12-2p, 2012 SSR 1, at *2. Indeed, in a record not cited by the ALJ, Plaintiff reported on February 6, 2020, that she had "intermittent" fibromyalgia symptoms with "aching" pain in "multiple locations" as well as "joint tenderness." AR 537. Therefore, the import of a lack of documentation in Plaintiff's treatment of the exact location of her pain is not apparent to the Court, and, moreover, the Court notes that Commissioner does not defend the ALJ's reasoning. *See* ECF No. 13 at 3–8.

The ALJ further reasons that Plaintiff received conservative treatment for her fibromyalgia, and Plaintiff has reported to providers that the condition is well-

1    controlled.  AR 21.  However, the Commissioner does not dispute Plaintiff's

2    documented contention that the record the ALJ cites to support that Plaintiff's

3    treatment for fibromyalgia is conservative is a transcription error in her treatment

4    notes.  *See* ECF Nos. 10 at 5.  Specifically, the record cited by the ALJ indicates that

5    Plaintiff's care plan provided as follows: "Will have you treat conservatively at this

6    time with anti inflammatories over the counter. Begin gentle stretching, light

7    exercises, and relaxation techniques as discussed. Apply ice to the affected area,

8    followed by heat. No longer than ten minutes of each. I recommend soaking the area

9    in warm water with epsom salt." AR 401 (treatment note from August 6, 2019, as

10   written in original).  However, this appears to be the treatment plan that was

11   prescribed for Plaintiff's low back pain and sciatica earlier in the record.  AR 425

12   (identical language in a treatment record from October 31, 2018).  Moreover, as the

13   Commissioner acknowledges elsewhere in her brief, Plaintiff's treatment plan

14   included taking the prescription medication Cymbalta, which the "treatment plan"

15   cited by the ALJ does not include.  AR 401, 416; *see also* ECF No. 13 at 4.

16          Furthermore, the Court cannot agree with the Commissioner that a record

17   including a treatment note that Plaintiff's "pain is relieved by physical therapy" and

18   that "Cymbalta worked well and would like to increase the dose," AR 417 (as

19   written in original), is substantial evidence that Plaintiff reported adequate relief

20   from her fibromyalgia pain to be able to work when Plaintiff reported a pain score of

21

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR
ADDITIONAL PROCEEDINGS ~ 18

1   8/10 at the same appointment, AR 422.  As the ALJ cites nothing else for this

2   proposition, the Court finds this reasoning unsupported.

3         The Court does not find adequate reasons supported by substantial evidence

4   for the ALJ's rejection of Plaintiff's claims regarding the effects of fibromyalgia on

5   her ability to work.

6                                    **Knee**

7         Plaintiff argues that, with respect to her knee condition, the ALJ first reached

8   a conclusion that there were "largely unremarkable" findings and then attempted to

9   justify that conclusion by ignoring record evidence suggesting an opposite result,

10  which is impermissible.  ECF No. 14 at 5 (citing AR 21; *Gallant v. Heckler*, 753

11  F.2d 1450, 1456 (9th Cir. 1984)); *see also* ECF No. 10 at 6–7 (citing medical

12  records showing impairment before and after Plaintiff's September 2020 knee

13  surgery).  Plaintiff adds, "[b]esides this, an ALJ cannot reject subjective testimony

14  solely because it cannot be fully supported by the objective evidence."  ECF No. 14

15  at 5 (citing *Rollins*, 261 F.3d at 856–57).  Plaintiff further argues that the ALJ erred

16  in discounting Plaintiff's complaints based on a treatment record in which Plaintiff's

17  orthopedist recommended conservative treatment and over-the-counter ibuprofen.

18  *Id.* (citing AR 21).  Plaintiff argues that the record is not substantial evidence of

19  conservative treatment adequately controlling Plaintiff's knee condition when the

20  orthopedist "only had an x-ray, the record then showed conservative treatment

21

failed, and MRI was acquired, and the orthopedist recommended surgery, indicating conservative treatment had been inadequate." *Id.* (citing AR 485 and 504–05). Plaintiff continues that evidence indicating that Plaintiff continued to have knee pain after her surgery also refutes the ALJ's conclusion as to her having "ongoing improvement." *Id.* at 6 (citing AR 21, 491, 496, 498, 569, 579, and 584).

The Commissioner defends that ALJ's treatment and maintains that the ALJ was supported by unremarkable physical examinations and conservative treatment in finding that Plaintiff's knee problems were inconsistent with medical evidence. ECF No. 13 at 5 (citing AR 458–59, 483, 491, 498, 504–05, and 577–79). The Commissioner characterizes Plaintiff's argument as mere disagreement with the ALJ's interpretation of the record and further contends that the Ninth Circuit has recognized that even where a claimant has undergone surgery, an ALJ still "may considered [sic] subsequent conservative treatment measures to discount a claimant's testimony about the severity of her impairments." *Id.* at 5–6 (citing *Smartt v. Kijakazi*, 53 F.4th 489, 499–500 (9th Cir. 2022)).

The ALJ reasoned as follows regarding Plaintiff's knee condition:

> The claimant reported an onset if right knee pain around September 2019. But notes through early 2020 show that her clinical presentation remained largely unremarkable, with little or no abnormality in gait, range of motion, or other areas of musculoskeletal function. Imaging of the knee revealed minimal abnormality. Orthopedic providers recommended only conservative treatment with over the counter medication (ibuprofen).

The claimant reported increased right knee pain in July 2020, and imaging confirmed a meniscus tear that required arthroscopic surgery in September 2020. About a week after the surgery, the claimant reported doing well and that she did not want physical therapy. Subsequent orthopedic notes through 2020 reflect ongoing improvement. For instance, in December 2020, the claimant reported to orthopedic providers that her right knee was stiff when she sits and pops when she walks, but she had no significant pain. The clinical examination was unremarkable, revealing normal, pain-free range of motion. Providers indicated that no further treatment was needed apart from the claimant continuing to walk for exercise. The claimant did not return seek attend orthopedic treatment until April 2021, when she reported increased right knee pain over the past two months. Her treating provider characterized her report as indicating a mild pain increase. Upon examination, the claimant had an antalgic gait, but only mild knee swelling and full range of motion. Providers recommended only conserve [sic] treatment with medication.

AR 21 (punctuation as in original) (citing AR 458–59, 481–86, 491–92, 498–99, 504, 507–09, and 577–79).

Plaintiff's medical record is not in harmony with the narrative forwarded by the Commissioner and the ALJ with respect to Plaintiff's knee pain. First, it is doubtful that the record reasonably could be construed as containing "largely unremarkable" findings from 2019 until September 2020. *See* ECF No. 10 at 6–7 (collecting citations to treatment records documenting painful range of motion, swelling, limping gait, noted atrophy, and other findings). Moreover, a physician prescribed conservative treatment before having the benefit of further imaging, which the physician ordered when Plaintiff continued to complain of pain. *See* AR 485, 504–05. In addition, as Plaintiff summarizes, with supporting documentation,

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 21

Plaintiff "tried and failed conservative treatment, had surgery only in September 2020, had persistent follow-up with the specialist in the following months, informed the specialist in April 2021 of chronic pain since surgery and a plan for further injections and bone scans was made, and the final record in May 2021 noted the knee was still not better."  ECF No. 14 at 6 (citing AR 21–22, 491, 496, 498, 569, 579, 584).  In the case upon which the Commissioner relies, Plaintiff had routine, conservative care following surgery, which is distinguishable from Plaintiff's record. *See* 53 F.4th at 500.  Given the friction between the ALJ's reasoning and the record, the Court does not find the ALJ's reasons to be either convincing or specific to Plaintiff's complaints, and that reasoning is not supported by substantial evidence.

Accordingly, the ALJ did not provide "specific, clear, and convincing reasons" for discounting Plaintiff's subjective complaints regarding her fibromyalgia and knee condition.  *See Smolen*, 80 F.3d at 1281.  Moreover, the Court cannot conclude that the ALJ's error was harmless, as a different assessment of Plaintiff's subjective complaints regarding these impairments could have supported a finding that Plaintiff cannot work and is disabled.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492–93 (9th Cir. 2015).  Having already found reversible error, the Court does not proceed to analyze the other errors that Plaintiff asserts, regarding her subjective complaints about her headaches and mental health symptoms and regarding the treatment of medical source opinions.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 22

1    Additionally, the Court acknowledges that Plaintiff seeks relief in the form of

2 remand for further proceedings and makes no argument that any deviation from the

3 default remand for further proceedings is warranted here.  *See* ECF Nos. 10 at 21; 14

4 at 11.

5    Accordingly, **IT IS HEREBY ORDERED**:

6    1.    Plaintiff's Brief, **ECF No. 10**, is **GRANTED**.

7    2.    Defendant the Commissioner's Brief, **ECF No. 13**, is **DENIED**.

8    3.    The matter is **REMANDED** to the Commissioner for additional

9 proceedings consistent with this Order.

10    4.    Judgment shall be entered for Plaintiff.

11    **IT IS SO ORDERED.**  The District Court Clerk is directed to enter this

12 Order, enter judgment for Plaintiff, provide copies to counsel, and **close the file**.

13    **DATED** September 29, 2023.

14

15    *s/ Rosanna Malouf Peterson*
      ROSANNA MALOUF PETERSON
      Senior United States District Judge

16

17

18

19

20

21

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR
ADDITIONAL PROCEEDINGS ~ 23